UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DR. MALINI SIMS, M.D.,

    Plaintiff,

v.

**COMPLAINT**
Civil Action No.

FROEDTERT HEALTH, INCORPORATED PLAN,

and

UNUM LIFE INSURANCE COMPANY OF AMERICA,

    Defendants.

## I. INTRODUCTION

1. This is a claim for monetary relief and attorneys' fees, under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(1)(B) and 1132(g), brought by Dr. Malini Sims, M.D., for employee benefits that she has been denied by the Defendant.

2. 29 U.S.C. § 1133(2) requires Defendants to provide Dr. Sims with a "full and fair review" of "the decision denying [her] claim for Long Term Disability benefits."

3. Defendants failed to provide such a review and denied Dr. Sims benefits to which she was entitled in violation of 29 U.S.C. § 1133(2).

## II. JURISDICTION AND VENUE

4. This Court has original jurisdiction over this matter under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e).

1

5. Venue is proper in this district, under 28 U.S.C. § 1391(b)(2) and 29 U.S.C. § 1132(e)(2) because the Plan is administered by Froedtert Health, Inc. in Milwaukee, Wisconsin, which is in this judicial district.

### III. PARTIES

6. Plaintiff, Malini Sims, MD (hereinafter "Plaintiff" or "Dr. Sims"), is an adult citizen of the State of Wisconsin. At all relevant times hereto, Dr. Sims was a participant, as defined in 26 U.S.C. § 1002(7), in the Plan.

7. Defendant Froedtert Health, Incorporated Plan (hereinafter "the Plan") was an employee welfare benefit plan within the meaning of 29 U.S.C. § 1002(1), and administered in Milwaukee, Wisconsin by the Plan administrator, Froedtert Health, Inc. At all relevant times hereto, the Plan offered, *inter alia*, long-term disability benefits to its participants, including to the plaintiff, through an insurance policy issued by Unum Life Insurance Company of America (hereinafter "Unum"). At all times relevant hereto, the Plan delegated to the insurer, Unum Life Insurance Company of America, all eligibility decisions under the Plan and the obligation to pay the claims Unum deemed eligible.

8. Defendant Unum Life Insurance Company of America, is a foreign insurance company and issued an insurance policy providing long term disability benefits to eligible participants of the Plan, including Plaintiff. Unum's statutory home office is in Portland, Maine, with its registered agent for service of process is Corporation Service Company located at 33 East Main Street, Suite 610, Madison, Wisconsin, 53703. At all relevant times hereto, the Plan delegated to the insurer, Unum, all eligibility decisions under the Plan and the obligation to pay the claims Unum deemed eligible.

## IV. STATEMENT OF FACTS

9. Dr. Sims is a board-certified internal medicine physician, who has been in practice since 1993.

10. In 2014, Dr. Sims entered into an employment contract with Froedtert Health & the Medical College of Wisconsin Community Physicians, Inc. (hereinafter "Froedtert") to provide services as an internal medicine physician.

11. At all times relevant hereto, Dr. Sims elected long-term disability coverage through Unum's insurance policy, administered by the Plan, which delegated all authority to make eligibility decisions and the obligation to pay claims to Unum.

12. As a consequence of this delegation, Unum acted as the *de facto* Plan Administrator.

13. The Plan expressly states that it is subject to the laws of Wisconsin.

14. Under Wisconsin insurance law, any ambiguity in the Plan must be construed in favor of the non-drafting party.

15. As an internal medicine physician, the material and substantial duties of her job included, among others: consistent attendance; seeing patients; charting; reviewing medical records; reading medical journal articles; and standing and walking.

16. Until September 2020, Dr. Sims had no trouble performing the material and substantial duties of her job.

### Plaintiff's Disability

17. On September 15, 2020, while she was seeing a patient and performing her regular occupation as an internal medicine physician, Dr. Sims experienced what would be the first of many attacks of vertigo.

18. The attack came on quickly and without warning while washing her hands. The room began spinning, she became nauseous and diaphoretic, and was so unstable that she had to hold onto the sink to keep herself from falling.

19. After a couple of minutes of constant spinning, her symptoms improved enough to complete her work day.

20. The next few days following Dr. Sims's initial attack, Dr. Sims was unable to get out of bed without experiencing severe and debilitating dizziness.

21. On September 29, 2020, and again while she was at work, Dr. Sims experienced another severe attack that resulted in hospitalization.

22. The effects of this attack were more severe and lasted longer than her September 15, 2020 attack.

23. Rather than her vertigo lasting for minutes, her symptoms lasted for hours and were triggered by the smallest movement. She was unable to walk due to her dizziness and dysequilibrium, and her vertigo was accompanied by severe nausea.

24. Dr. Sims was diagnosed with Vestibular Neuritis by Board Certified Otolaryngologist, Dr. Jessica Southwood, MD, who also prescribed a short course of medications and advised Dr. Sims to take time off of work and begin vestibular therapy.

25. Over the next few weeks and months, Dr. Sims continued to experience her initial symptoms, which interfered with activities of daily life. These symptoms persist to this day.

26. Dr. Sims continued to experience severe episodes of intense dizziness that would not break for hours, accompanied by severe nausea, and dysequilibrium to the point where she required assistance to walk or stand. Additionally, she experienced incredible fatigue,

intense brain fog, nausea and dizziness that were exacerbated by visual stimuli, and hyperacusis and tinnitus in her left ear.

27. Dr. Sims followed all medical advice she received and completed vestibular therapy.

28. Although she experienced improvement, she would experience a recurrence of her symptoms as soon as she attempted to return to work in any capacity, which caused her to miss additional work.

29. Specifically, the material and substantial duties of Dr. Sims's regular occupation caused, and still causes, an exacerbation and recurrence of her disability.

30. As a result of the ongoing effects of Dr. Sims's disability, she has been unable to work since September 29, 2020.

## Disability Benefits

31. Due to the severity of her disability, and at the advice of her medical providers, September 29, 2020 was the last day that Dr. Sims was able to work.

32. Consequently, Dr. Sims applied for and was subsequently approved for Short Term Disability (hereinafter "STD") Benefits beginning October 7, 2020 through March 28, 2021.

33. Thereafter, Dr. Sims's claim was turned over to Unum's Long-Term Disability (hereinafter "LTD") unit.

34. The Plan provides the following definitions, *inter alia*:

　　a. "Disability" renders a covered individual "limited from performing the material and substantial duties of your regular occupation due to your sickness or injury" and when "you have a 20% or more loss of you indexed monthly earnings due to the same sickness or injury."

5

Case 2:23-cv-01214-JPS　　Filed 09/12/23　　Page 5 of 9　　Document 1

b. "Material and Substantial Duties" [(a)] are normally required for the performance of your [claimant's] regular occupation; and [(b)] cannot be reasonably omitted or modified.")

35. The Plan also expressly stated that "disability" can be "based primarily on self-reported symptoms" such as "headaches, pain, fatigue, stiffness, soreness, ringing in the ears, dizziness, numbness and loss of energy."

36. However, on May 10, 2021, Dr. Sims received a letter from Unum informing her that her claim for LTD benefits had been denied and payment would not continue beyond April 6, 2021.

37. Dr. Sims timely appealed the denial on October 12, 2021 through the appeals process dictated by Unum in the Plan.

38. After exchanging various communications with Unum's Appeals Unit, on March 24, 2022, Dr. Sims received a letter from Unum informing her that the decision to deny benefits was affirmed.

39. This decision failed to provide Dr. Sims with the "full and fair review" she was due under the applicable law by, *inter alia*:

a. Failing to "[p]rovide for a review that takes into account all comments, documents, records, and other information submitted by [Dr. Sims] relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination." 29 C.F.R. § 2560.503-1(h)(2)(iv).

b. Summarily rejecting the evidence submitted by Dr. Sims, in favor of the conclusory opinion of Unum's own in-house reviewing doctor, Dr. Neal Greenstein, who:

       i. is Board Certified in Internal Medicine, not Otolaryngology, and thus lacks the necessary expertise, board certification, and specialization in Otolaryngology, vestibular disorders, or vestibular neuritis;

       ii. systematically failed to provide a single shred of *reasoning* for his outright rejection of the evidence and opinions submitted to counter his opinion;

       iii. failed to address much of the records submitted, and cherry picked out-of-context phrases from the medical records in an effort to bolster his opinion;

       iv. ignored evidence submitted by Dr. Sims's treating providers; and

       v. misrepresented the record.

    c. Placing an inappropriately high burden on Dr. Sims to justify her eligibility for benefits through objective evidence, when Defendant's own policy provides for benefits when the disability is based solely on "self-reported symptoms."

    d. Basing its denial on an unreasonable or irrational basis.

40. Dr. Sims has satisfied the exhaustion requirements.

41. At all times material hereto, the Plan delegated the benefit determination to Unum.

42. At all times material hereto, benefits awarded under the Plan are paid by Unum.

43. Thus, at all times relevant hereto, Unum has operated under a conflict of interest as it is both the entity that determines whether to award benefits that it pays out of its own funds. Moreover, the eligibility determination is made, in part, in reliance on reports from physicians that Unum directly employs or with whom Unum routinely does business.

## V. CAUSE OF ACTION

### COUNT ONE: VIOLATION OF 29 U.S.C. § 1133(2)

44. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth herein.

45. 29 U.S.C. § 1132(a)(1)(B), permits a plan participant to bring a civil action to recover benefits due to her under the terms of a plan, to enforce her rights under the terms of a plan, and/or to clarify her rights to future benefits under the terms of a plan.

46. At all times relevant hereto, Dr. Sims has been entitled to long-term disability benefits under the Plan and Policy for the period from September 29, 2020 to the present.

47. 29 U.S.C. § 1133(2) affords to plan participants, such as Dr. Sims, a "full and fair review" of a denial of benefits.

48. By denying Dr. Sims's claim for long-term disability benefits, and by related acts and omissions, Defendants have violated and continue to violate the terms of the Policy and Dr. Sims's rights thereunder.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully prays that this Court:

1. Declare that Defendants violated the terms of the Plan and federal law by denying Dr. Sims's claim for long-term disability benefits;

2. Order Defendants to pay long-term disability benefits to Plaintiff pursuant to the terms of the Plan from April 6, 2021, through the date judgment is entered herein, together with prejudgment interest on each and every such monthly payment through the date judgment is entered herein;

3. Declare Plaintiff's right to receive future long-term disability benefit payments under the terms of the Plan;

4. Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to 29 U.S.C. § 1132(g);

5. Provide such other relief as the Court deems equitable and just.

Dated at Milwaukee, Wisconsin this 12th day of September, 2023.

        FIRST, ALBRECHT & BLONDIS, s.c.
        Attorneys for Plaintiff

        s/James P. End
        James P. End
        State Bar. No. 1032307
        jend@fabattorneys.com

        s/Alexa C. Bradley
        Alexa C. Bradley
        State Bar No. 1102009
        abradley@fabattorneys.com

        Broadway Theatre Center
        158 North Broadway, Suite 600
        Milwaukee, WI 53202
        Telephone: (414) 271-1972
        Facsimile: (414) 271-1511